UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Daryl Haley,<br><br>    Plaintiff,<br><br>v.<br><br>United Airlines Inc.,<br><br>    Defendant. | Case No. 14 C 2614<br><br>Judge John Robert Blakey |

**MEMORANDUM OPINION AND ORDER**

This case arises from injuries Plaintiff Daryl Haley purportedly sustained while a passenger aboard United Express Flight No. 4940 due to an inoperative pressurization system. Plaintiff brings a single claim for negligence against Defendant United Airlines, alleging that Defendant breached its heightened duty of care as a common carrier by failing to safely transport passengers on that flight. Defendant now moves for summary judgment [50]. That motion is granted.

**I.   Legal Standard**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any

material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether a genuine issue of material fact exists, this Court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party, here, Plaintiff. *See CTL ex rel. Trebatoski v. Ashland School District*, 743 F.3d 524, 528 (7th Cir. 2014).

**II.    Facts[1]**

Plaintiff alleges that he experienced a popping sensation and pain in his ears while a passenger aboard an April 15, 2012 flight from Texas to Oklahoma. DSOF ¶ 5; PSOAF ¶ 6. That was United Express Flight No. 4940. DSOF ¶ 5. Plaintiff, citing to his own affidavit, attributes his injury to the aircraft's purportedly inoperable pressurization system. PSOAF ¶ 5 (citing Haley Affidavit [61-3] ¶ 6).

The aircraft carrying United Express Flight No. 4940 was owned by and registered to Colgan Air—a separate company from Defendant United Airlines. DSOF ¶¶ 10, 12. Most of the facts about that aircraft are undisputed, though the parties dispute whether Defendant ultimately exercised control over United Express Flight No. 4940. It is undisputed that Defendant did not own or maintain the subject aircraft. DSOF ¶¶ 10-11. And it is undisputed that Colgan Air—not Defendant—employed, trained and paid the staff, including the pilots, aboard United Express Flight No. 4940 on April 15, 2012. DSOF ¶¶ 8-9.

It also is undisputed that United Express Flight No. 4940 was flown under a Capacity Purchase Agreement between Defendant and Colgan Air. PSOAF ¶ 1.

---

[1] The facts are taken from the parties' Local Rule 56.1 statements of fact. "DSOF" refers to Defendant's statement of undisputed facts [50-2], with Plaintiff's responses [60]. "PSOAF" refers to Plaintiff's statement of additional facts [61], with Defendant's responses [65].

Under the Agreement, Defendant agreed to purchase seats on certain Colgan Air flights and further agreed, among other things, to schedule and price the flights; in exchange, Defendant received revenue generated from these flights. *See generally* Capacity Purchase Agreement [73-1].

### III. Analysis

Plaintiff alleges that by flying the aircraft without an operative pressurization system, Defendant failed to transport safely passengers aboard United Express Flight No. 4940, and thus was negligent and breached its heightened duty of care as a common carrier. *See* Complaint ¶ 19. To prevail on his negligence claim, Plaintiff must show that: (1) Defendant owed Plaintiff a duty of care; (2) Defendant breached that duty of care; and (3) the alleged breach proximately caused Plaintiff's injuries. *Melchers v. Total Electric Construction*, 723 N.E.2d 815, 818 (Ill. App. Ct. 1999); *see also Baez v. Target Corp.*, No. 13-4258, __ F. Supp. 3d __, 2015 WL 753740, at *2 (N.D. Ill. Feb. 20, 2015). This Court assumes without deciding that Illinois substantive law applies to this case based on the agreement by the parties, as confirmed by their responses to this Court's request for supplemental briefing on the issue, *see Spitz v. Proven Winners North America, LLC*, 759 F.3d 724, 729 (7th Cir. 2014), and *Wood v. Mid-Valley Inc.*, 942 F.2d 425, 426-27 (7th Cir. 1991); and the apparent absence of any conflict of law.

Defendant argues that Plaintiff cannot prove the first or third elements of his negligence claim. This Court considers the two elements in turn, and concludes

that Plaintiff has failed to meet its burden at summary judgment with respect to both.

A.     Element 1: Duty of Care

The parties dispute whether the Capacity Purchase Agreement gave Defendant control over United Express Flight No. 4940 such that Defendant owed a duty of care to Plaintiff as a passenger aboard that flight. If no duty is owed, then summary judgment for Defendant is warranted because Plaintiff would be unable to prove one of the elements necessary to his negligence claim. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996). Determining the existence of a duty of care is an issue of law amenable to resolution on summary judgment. *Eichengreen v. Rollins, Inc.*, 757 N.E.2d 952, 959 (Ill. App. Ct. 2001); *Melchers*, 723 N.E.2d at 818.

The resolution of the dispute here turns on this Court's interpretation of the Capacity Purchase Agreement. Absent the Agreement, Plaintiff would have no basis to hold Defendant liable for any injury sustained aboard an aircraft owned, maintained and staffed by another carrier. DSOF ¶¶ 8-9, 11; *see* [79] at 4. Under Illinois law, when, as here, an allegation of negligence is based upon a contractual obligation, the existence of a duty of care is determined by the terms of the contract even though the plaintiff's allegations sound in tort rather than contract. *Eichengreen*, 757 N.E.2d at 959; *Melchers*, 723 N.E.2d at 818. The heightened duty of care owed by common carriers, such as Defendant, applies to the operations of their vehicles but not to the actions of third-parties. *Gaines v. Chicago Transit*

*Authority*, 804 N.E.2d 653, 655 (Ill. App. Ct. 2004). Common carriers thus are generally not liable for injuries that result from a cause beyond their control. *Id.* A contract though may be able to alter that outcome.

In *Eichengreen*, 757 N.E.2d at 955, 959, the defendant had installed smoke and heat detectors in the plaintiff's home pursuant to a contract, yet an undetected fire occurred at the pool house causing substantial damage. The plaintiff brought a negligence claim against the defendant, but the Appellate Court denied that claim and granted the defendant's motion for summary judgment. *Id.* at 955, 960. The Court found that the plaintiff was alleging that the defendant owed and breached duties of care that it did not agree to undertake (such as failing to install smoke detectors at areas of the home not covered by the contract), and that the defendant did not breach any of the duties it did agree to undertake. *Id.* at 959-60.

While Illinois cases do not address the exact fact pattern here, and neither this Court nor the parties have identified any such cases, analogous cases from other jurisdictions confirm that the proper inquiry here is whether the Capacity Purchase Agreement gave rise to a duty of care owed by Defendant that otherwise would not have existed. Most instructive is *Freese v. Continental Airlines, Inc.*, No. 08-1070, 2009 WL 2232857, at *6, 8 (N.D. Ohio July 23, 2009), *affirmed in part*, 412 Fed. Appx. 770 (6th Cir. Feb. 3, 2011), where the Court granted in relevant part summary judgment for the defendant airline carrier (Continental Airlines).

The plaintiff in *Freese* was a passenger on Continental Flight No. 2243 and was injured when a flight attendant spilled hot coffee on her allegedly causing

5

second and third degree burns. 2009 WL 2232857, at *1. The issue at summary judgment, as here, was whether Continental Airlines owed any duty of care to the plaintiff. *Id.* Continental Airlines argued, as Defendant here, that the flight was operated by a different airline carrier (ExpressJet Airlines); and that, again as here, Continental Airlines did not assume that responsibility through its Capacity Purchase Agreement with ExpressJet Airlines. *Id.* at *2, 5. Under the Capacity Purchase Agreement there, like the one here, Continental Airlines purchased seats from ExpressJet Airlines on covered flights and was responsible for scheduling and pricing the flights (among other obligations); in exchange, Continental Airlines received revenue from these flights. *Id.* at *2. The Capacity Purchase Agreement also allowed Continental Airlines to terminate the Agreement if it determined that there is a "material safety concern with ExpressJet's operations." *Id.* (brackets added).

The Court determined that, while Continental Airlines was a common carrier that owed passengers a heightened duty of care, it was not the plaintiff's common carrier—ExpressJet Airlines was. *Id.* at *6. ExpressJet Airlines exercised control over passengers; the flight crew comprised ExpressJet Airlines employees; ExpressJet Airlines trained that crew; and ExpressJet Airlines operated Continental Flight No. 2243. *Id.* Continental Airlines did not assume those duties through the Capacity Purchase Agreement, so it could not liable to the plaintiff. *Id.*

That same analysis guided the Court's decision to grant summary judgment for the airline carrier in *McManus v. Continental Airlines Inc.*, No. 11-1838, 2013

WL 2471679, at *1-2 (W.D. La. June 6, 2013). As here, the defendant airline carrier in *McManus* propounded affidavits showing that it did not operate the subject flight. *Id.* at *2.

Likewise, in *In re Air Crash at Lexington, Kentucky, August 27, 2006*, No. 06-316, 2008 WL 2945944, at *1, 8 (E.D. Ky. July 8, 2008), the Court granted summary judgment for the defendant airline carrier (Delta Air Lines) for the crash of a flight operated by Delta Air Lines' subsidiaries. Delta Air Lines did not exercise control over its subsidiaries' flight. *Id.* at *3-6.

As in *Eichengreen*, *Freese* and *Gaines*, here, while Defendant may be a common carrier, it neither controlled nor operated United Express Flight No. 4940, and thus is not liable to Plaintiff for his injury. The undisputed facts show that Colgan Air owned and maintained the aircraft that flew United Express Flight No. 4940 on April 15, 2012. DSOF ¶¶ 10-11. The flight crew comprised employees hired, trained and paid by Colgan Air—not Defendant. DSOF ¶¶ 8-9. Defendant had no employees aboard the flight. DSOF ¶¶ 7-9.

An examination of the Capacity Purchase Agreement confirms that Defendant did not take control of the maintenance of United Express Flight No. 4940 away from Colgan Air. While the Capacity Purchase Agreement empowered Defendant to conduct safety inspections, Colgan Air remained solely responsible for aircraft safety. Capacity Purchase Agreement § 4.06. Section 4.06 states:

> In the event of a reasonable safety concern, Continental shall have the right, at its own cost, to inspect, review, and observe Contractor's [Colgan Air] operations of Scheduled Flight. Notwithstanding the conduct or absence of any such review, Contractor is and shall remain

7

> solely responsible for the safe operation of its aircraft and the safe provision of all Schedule Flights and other Regional Airlines Services, including without limitation (a) complying with all FAA and TSA regulations … Nothing in this <u>Section 4.06</u> or otherwise in this Agreement is intended or shall be interpreted to make Continental responsible for such safety matters.

Capacity Purchase Agreement § 4.06 (underlining in original).[2] Other provisions of the Agreement are in accord. Colgan Air maintained responsibility for aircraft maintenance, operations and safety despite the flight bearing the "United" name. *See, e.g.*, Capacity Purchase Agreement §§ 4.01, 4.04, 7.04(d), Ex. D. Exhibit D to the Agreement, for example, states that "Contractor [Colgan Air] shall have sole responsibility for and control over, and Continental shall have no responsibility for, control over or obligations or duties with respect to, each and every aspect of Contractor's operation of CO [Continental] flights."

Plaintiff correctly argues that the Capacity Purchase Agreement requires that Colgan Air planes be equipped with a "noise and vibration suppression system," and further that Defendant acquired broad powers under the Agreement, including the right to conduct safety inspections and the power to set flight routes and fares. Yet *Gaines* and *Freese* show that those responsibilities do not impose a duty of care on Defendant because the passenger's injury remained outside the defendant's control. Indeed, the Court in *Freese* found no duty of care despite the Capacity Purchase Agreement there allowing the defendant airplane carrier to terminate the Agreement if there were "material safety concerns" with the contractor's operations. 2009 WL 2232857, at *2, 6.

---

[2] Given the corporate merger, the references to "Continental" in the Capacity Purchase Agreement refer to the Defendant United Airlines, Inc.

8

Plaintiff also points to the Code of Federal Regulations to argue that Defendant had control over United Express Flight No. 4940, but the Regulations actually warrant granting summary judgment for Defendant. Plaintiff cites the definition of "operational control" in the general definitions section of the regulations for Title 14 ("Aeronautics and Space"). [73] at 5 (citing 14 C.F.R. § 1.1). The definition states that "operational control" is, "with respect to a flight," the "exercise of authority over initiating, conducting or terminating a flight." 14 C.F.R. § 1.1. Section 1.1 by its very terms applies only to Subparts A to K of Chapter 1 of Title 14. Section 1.1 does not apply to Subpart T which governs "flight operations." Within Subpart T, Section 121.533 appears to be most on-point. Section 121.533 addresses "operational control" over domestic flights, and states that the "pilot in command of an aircraft is, during flight time, … responsible for the safety of the passengers, crewmembers, cargo, and airplane." 14 C.F.R. § 121.533(d). Here, the pilot in command of United Express Flight No. 4940—who was thus "responsible for the safety of the passengers"—was a Colgan Air employee. DSOF ¶¶ 8-9.

For these reasons, summary judgment in favor of Defendant is warranted. Defendant did not owe Plaintiff the requisite duty of care.

### B. Element 3: Proximate Causation

Defendant moves, in the alternative, for summary judgment on the basis that there is no triable issue of fact as to proximate causation. Defendant recasts many of its same duty of care points, arguing that Defendant's conduct could not have been the proximate cause of Plaintiff's injuries because Defendant did not operate

9

United Express Flight No. 4940. Those arguments have been resolved above in Defendant's favor, so this Court declines to repeat them here other than to add that they also warrant summary judgment on the issue of proximate causation.

Defendant also raises a new, independent line of argument that is fatal to Plaintiff's negligence claim. Defendant, citing *Kane v. Motorola, Inc.*, 779 N.E.2d 302, 310-11 (Ill. App. Ct. 2002), among other cases, argues that Plaintiff has failed to meet his burden at summary judgment to propound medical evidence connecting the subject aircraft's purportedly inoperable pressurization system to his injuries. This Court agrees.

The Appellate Court in *Kane* affirmed summary judgment for the defendant under circumstances similar to here. Fatal to his claim, the injured plaintiff in *Kane* marshalled no "scientific evidence" at summary judgment, despite his obligation to do so, showing that his brain tumor was caused by testing the defendant's prototype antennas for cell phones. *Kane*, 779 N.E.2d at 304, 310-11; *see also Barker v. Eagle Food Centers, Inc.*, 634 N.E.2d 1276, 1278-79 (Ill. App. Ct. 1994) (requiring the injured plaintiff to marshal evidence of causation at summary judgment). The same principles from *Kane* guided the Court's decision to grant summary judgment for the defendant in *Kirk v. National Railroad Passenger Corp.*, No. 06-2169, 2007 WL 1832115, at *1-2 (N.D. Ill. June 25, 2007). The injured plaintiff in *Kirk* could not show that his foot injuries were caused by his employment as a railroad carrier. *Id.* at *1. The plaintiff had propounded no

10

medical evidence drawing that connection, and the Court discredited the plaintiff's own testimony on the issue as unqualified and conclusory. *Id.*

Here, Plaintiff, despite his obligation to do so at summary judgment and like the unsuccessful plaintiffs in *Kane* and *Kirk*, has failed to point this Court to any medical evidence creating a triable issue of fact as to causation. In this case, Plaintiff's own bare assertion that he "became sick due to the lack of pressurization" cannot bridge that gap. Haley Affidavit [61-3] ¶ 6 (cited at PSOAF ¶ 6). Plaintiff is not qualified to render testimony on the causation issue, and the testimony he has rendered and cited to this Court—the totality of which amounts to the above quote—is too conclusory to survive summary judgment. Fed. R. Evid. 701(c); *see Kirk*, 2007 WL 1832115, at *1-2.

Plaintiff has not cited any other potential evidence to save his claim and any attempt to do so now would be untimely. *Johnson v. Cambridge Industries, Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). For this additional reason, this Court grants Defendant's motion for summary judgment.

## IV. Conclusion

Defendant's motion for summary judgment [50] is granted. The September 8, 2015 status hearing is stricken; the parties need not appear then. Civil case terminated.

Dated: August 31, 2015

                                          Entered:

                                          John Robert Blakey
                                          United States District Judge